RAFAEL RIVERA ESBRI, Plaintiff and Appellee, *v.* PEDRO ARCHEVALD RODRÍGUEZ, Defendant and Appellant.

No. 12186.   Decided September 29, 1961.

*Benicio Sánchez Castaño* and *R. Rivero Cervera* for appellee.
*Práxedes Álvarez Leandri* and *Rafael Hernández Matos* for
appellant.

Division composed of Mr. Justice Santana Becerra, as Chief
Judge of Division, and Mr. Justice Blanco Lugo and Mr.
Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the
Court.

By order of September 9, 1951, the Superior Court, Ponce
Part, declared as sole and universal intestate heirs of Be-
lén Esbri, who died on March 16, 1945, her full sister An-
gélica, and her nephews and nieces, the plaintiff Rafael
Rivera-Esbri; Honoria, Belén, and María Teresa Esbri-
Fabery; Jesús Ramón, Zenaida Eustacia, Leonardo Hum-

berto, and Marina Esbri-Zaldo; and Diego Esbri-Bonilla. Heir Angélica Esbri died twenty-one months after her sister Belén, her three daughters María de los Angeles and Margarita Biaggi-Esbri and Deadina Bauzá-Esbri, and her two grandchildren William and Eleonora Natividad Biaggi-Soto having been declared as heirs.

Rivera-Esbri brought an action on February 18, 1953 against Pedro Archevald Rodríguez to redeem certain shares which the latter had acquired in two pieces of real property which formed part of the hereditary estate upon the death of Belén Esbri. To that end it was alleged:

"2. By deed No. 64, on Assignment of Hereditary Rights and Shares, executed in Ponce, Puerto Rico, on October 16, 1952, before Notary Práxedes Alvarez Leandri, co-owners Honoria Esbri-Fabery, María Teresa, also known as Felícita Esbri-Fabery, Jesús Ramón Esbri-Zaldo, and Marina Esbri-Zaldo, sold to defendant Pedro Archevald Rodríguez, who is a stranger in the community, the shares and rights to which they were entitled in the two properties described above, for the total price of $1,246.66, or $283.33 for Honoria Esbri-Fabery, $283.33 for María Teresa, also known as Felícita Esbri-Fabery, and $170 for each one of the remaining vendors, Jesús Ramón, Zenaida Eustacia, Leonardo Humberto, and Marina Esbri-Zaldo.

"3. By deed No. 75 for the sale of an undivided interest, executed in Ponce, P. R., on December 12, 1952 before Notary Rafael Hernández Matos, co-owners Margarita Biaggi-Esbri, María de los Angeles Biaggi-Esbri, and Deadina Bauzá-Esbri sold to defendant Pedro Archevald Rodríguez, who is a stranger in the community, the undivided interests corresponding to them in the properties above described for the total price of $600, or $200 for each one of them."

The complaint also contains the following averments which, properly analyzed, will lead us to determine the true nature of the action sought to be prosecuted: that plaintiff Rivera-Esbri was the owner of *one undivided interest* of one-fifth of the two urban properties in question; that the other

heirs to whom reference has been made in the first paragraph of this opinion were the owners of *certain* undivided interests, including the undivided share corresponding to each heir; that the plaintiff learned on February 10, 1953 of the sales of the *undivided interests corresponding to them* in the said properties made to the vendors; that the defendant is "a stranger *in the community*"; that a sufficient amount is deposited to cover the price of alienation of *"the undivided interests"* referred to in the second and third paragraphs of the complaint which were copied above, as well as the expenses incurred in the execution of the deeds of redemption in his favor, "subrogating himself in the place of the vendee on the same terms stipulated in the respective deeds transmitting to the defendant the rights of the *co-owners* who sold their shares to him." (Italics ours.) Lastly, plaintiff binds himself not to sell for four years *"the undivided interests"* object of the action.

Defendant was summoned on February 26, 1953, and on March 5 he filed, as his first pleading, a motion for dismissal alleging want of jurisdiction over the person and lack of facts sufficient to constitute a cause of action. This motion was dismissed on May 22. The period of 10 days granted to answer having expired, the defendant moved on June 19 for an extension of 20 days. It was not until July 24, or five months after the filing of the complaint, that the answer was filed, in which, among other things, the following special defenses are alleged: 1—want of jurisdiction and/or improper venue of the court, since the values or amounts involved in the action did not exceed $2,500, and that the district court had exclusive jurisdiction over the action; and 2—prescription of the action pursuant to §§ 1020 and 1414 of the Civil Code.

The trial court concluded, as a question of fact, that plaintiff Rivera-Esbri learned of the sales mentioned in the

complaint on February 3, 1953, or 15 days prior to the filing of the complaint. It concluded that it was a question of redemption of coheirs and not of property co-owners, and therefore dismissed the defense of prescription. It made no pronouncement as to the defense of lack of jurisdiction.

Appeal was taken from the judgment rendered.

### Challenge of Venue of the Court

Appellant urges this Court to annul the judgment rendered on the ground that the trial court lacked jurisdiction over the matter, since the value of the undivided interests object of the action of redemption did not exceed $2,500, without including interest, costs, and attorney's fees, § 13 of the Judiciary Act of 1952, No. 11 of July 24, 1952 (Sp. Sess. Laws, p. 30, 4 L.P.R.A. § 121), the district court being therefore the only competent court, by reason of the amount involved, to entertain the matter.

In an action for redemption, the amount involved for the purpose of determining what part of the Court of First Instance should properly take cognizance of the matter is fixed by taking into consideration the value of the thing sought to be recovered, *Fermaint* v. *Pizá*, 60 P.R.R. 446 (1942). In the instant case the amount of the selling price of the undivided interests was less than $2,500, and the action was therefore cognizable by the district court. However, we have reiterated that these "jurisdictional" distinctions do not cause the failure of the action brought, since "no cause shall fail on the ground that it has been submitted to a division without jurisdiction or authority or to a part of the court of improper venue." Section 10 of the Judiciary Act, *supra*, 4 L.P.R.A. § 62; *Rodríguez* v. *Registrar*, 75 P.R.R. 669 (1953); *Fernández* v. *District Court*, 76 P.R.R. 341 (1954); *Cooperativa Cafeteros* v. *Colón*, 76 P.R.R. 442 (1954); *Suliveres* v. *Arjona*, 76 P.R.R. 859 (1954); *Fernández & Hno.* v. *Pérez*, 79

P.R.R. 231 (1956); *Valentín* v. *Figueroa*, 79 P.R.R. 420 (1956); *Ramírez* v. *Ramírez*, 80 P.R.R. 501 (1958).

■ Appellant maintains, however, that since in his answer he alleged want of jurisdiction as a special defense, it can not be said that he agreed or consented impliedly to continue to prosecute the action in the superior court. We do not agree. In the first place, this question was not raised by a timely motion for change of venue, *Ramírez* v. *Ramírez*, 80 P.R.R. 501 (1958); *Fernández & Hno.* v. *Pérez*, 79 P.R.R. 231 (1956), but although he moved for dismissal of the complaint, such motion was based on other reasons or grounds, that is, want of jurisdiction over the person because of defects in the service of summons and the failure to allege facts constituting a cause of action. In the second place, it is not sufficient to raise the question of lack of "jurisdiction" or venue, but it is necessary that action be taken by the defendant to transfer the cause to the appropriate division or part, as the case may be. Paraphrasing the opinion in *Fernández* v. *Registrar*, 75 P.R.R. 669 (1953), the implied consent is evidenced by the conduct or inaction of the party in not requesting, when he has the opportunity to do so, the transfer of the suit to an appropriate division or part. Where a litigant has been diligent and consistent in his contention, we have protected his right to have the case heard in the competent court by issuing a writ of prohibition, *Fernández* v. *District Court*, 76 P.R.R. 341 (1954).

### Prescription of the Action

■■ As stated hereinbefore, the trial court found that plaintiff Rivera-Esbri learned personally on February 3, 1953 of the sales made in favor of the defendant. Since the action for redemption was brought on the following 18th day, the action was brought 15 days after the redeemer learned of the sales. Hence, the special importance of the determination whether the question is one of redemption among coheirs,

for which a period of one month [1] is granted, or a redemption among co-owners, which should be exercised within nine days.[2]

■ We must first determine, though briefly, the nature of both redemptions. Practically there is unanimity [3] in the doctrine that the hereditary subrogation consecrated in § 1020 of the Civil Code, also known as redemption of coheirs, is a species or subspecies of redemption of co-owners, for both involve a situation of indivision, except that the former presents a difference by reason of the object for which the community was created. VII Manresa, *Comentarios al Código Civil Español* 716 (1943 ed.); XVIII Scaevola, *Código*

---

[1] Section 1020 of the Civil Code, 1930 ed., 31 L.P.R.A. § 2886, provides that:

"If any of the heirs should sell his hereditary rights to a stranger before the division, all or any of the coheirs may subrogate himself in the place of the purchaser, reimbursing him for the value of the purchase, provided they do so within the period of a month, to be counted from the time they were informed thereof."

Despite the above language which seems to indicate that notice to the plaintiff coheir is necessary in order that the thirty-day period may begin to run, in *Olivieri* v. *Biaggi*, 17 P.R.R. 676 (1911), we held that such period is counted from the time the coheir is informed of the conveyance, whether such information comes to him directly from the vendor and coheir or from any other person, or through any other channel. The Supreme Court of Spain holds the same view in its Judgments of November 26, 1900 (90 *Jur. Civ.* 727), and of February 3, 1915 (132 *Jur. Civ.* 321).

[2] Section 1414 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3924, provides that:

"The right of legal redemption can not be exercised except within nine days, counted from the entry in the registry, and in the absence thereof from the time the redeemer may have had knowledge of the sale."

Regarding the nine-day period, see *Zalduondo* v. *Iturregui*, 83 P.R.R. 1 (1961); *Gómez* v. *Collazo*, 67 P.R.R. 453 (1947); *Rosaly* v. *Ríos*, 63 P.R.R. 801 (1944); *Felici* v. *Ribas et al.*, 11 P.R.R. 517 (1906); De Diego, F., *Consulta sobre el Derecho de Retracto*, VI *Revista de Derecho Privado* 335, 338–41.

[3] The only voice which dissented from the criterion enunciated is that of Registrar José Oliver Martí who in an interesting article entitled *"Consideraciones y supuesto práctico en relación con el artículo 1067 del Código Civil,"* published in the *Revista General de Derecho*, 3d year, number 36, pp. 466–72 (September 1947), sets out the fundamental differences which in his opinion exist between both redemptions, and, because of the interesting discussion which he makes, we take the liberty to reproduce:

590

*Civil* 667 (1954 ed.) ; 4 Castán, *Derecho Civil Español, Co-
mún y Foral* 137 (1952 ed.) ; 3 Puig Brutau, *Fundamentos
de Derecho Civil* 604 (1953 ed.) ; 6–3 Sánchez Román, *Estu-
dios de Derecho Civil* 2081 (1910 ed.) ; Velázquez, *Teoría de
Derecho Sucesorio Puertorriqueño* 112 (1961 ed.) ; Badenes
Gasset, *La Preferencia Adquisitiva en el Derecho Español* 104
(Bosch ed. 1958) ; González Jerónimo, *La Comunidad Here-*

"As a general rule, the law commentators and authors, as well as
some judgments of the Supreme Court, tend to place it on the same footing
as the redemption of co-owners, as a species or subspecies, they say, of
the same. Without denying that analogies actually exist (indivision of
the thing and of the hereditary right), we believe that they are separated
by substantial and essential differences:

"(*a*) The legal redemption presupposes the indivision of something
real, tangible, determinate, something which appears to us with defined
contours, which *injures* our corporal senses, the thing, in short. On the
other hand, in the subrogation under study the indivision affects the
seamless, imprecise, indeterminate, abstract, a sort of nebula which does
not show in what, how, or even it will materialize; a quality: that of heir.

"(*b*) In the redemption of co-owners, as in all others, the effectiveness
sought and which served as an inducement to the lawmaker to create
them, is immediate, at present; the indivision of the thing lessens or disap-
pears, causing at the same time the lessening or disappearance of the
inconveniences which the joint property entails in the administration and
possible and convenient alienation thereof. The *minifundio* is also corrected
or disappears, and the same could be said of the other redemptions. On
the contrary, in the subrogation under consideration there is no momen-
taneous effectivity, and possibly not even remote; the hereditary right may
be consolidated in fewer hands, that is, fewer persons will possess that
quality of heir, but nothing practical is accomplished thereby, since it is
something subtle and abstract, mere power of accepting or repudiating,
and as such power, what difference does it make whether their owners are
few or many, coheirs or not, relatives or strangers, when after all the
inheritance appears to be negative? And even assuming that it appears
to be positive, what inconveniences are avoided or advantages obtained
because the hereditary lots are more or less when the properties, by reason
of their nature, are perfectly divisible (metalic or representative symbols)
and they are not undivided nor consist of material divisions of properties
which form part of other new ones? And even conceding this, what is
the use of creating a new redemption, since those undivided properties or
material division of properties will disappear or lessen at the proper time
when the new owners—old coheirs—sell or give in payment their un-
divided shares or new properties, upon the co-owners or adjacent owners
exercising their respective redemptions? Can it be rationally presumed
that the lawmaker created a new redemption which, like all—naturally—
causes at present certain discomfort and uneasiness, in anticipation of

*ditaria,* 7 *Revista Crítica de Derecho Inmobiliario* 174 (1931). Therefore, the essential difference between both redemptions lies in the purpose of the indivision: in the hereditary subrogation, the object is the share or interest of the coheir in *all* the properties which form part of the inheritance estate; in the redemption of co-owners, the object is the specific share or undivided interest of co-owner in the thing held in common ownership, *Fuertes* v. *Arzón,* 81 P.R.R. 479 (1959).

such hypothetical and remote advantages which, possibly and perhaps probably, will not occur because the suppositions motivating them do not occur, and if they do occur they may be recovered through the legal redemptions which for that purpose were created? We wish to say that in this respect the law did not have to create the doctrine announced in article 1067; it had already provided and regulated it in the articles on legal redemptions, dealing in particular with co-owners and adjacent owners.

"(c) Moreover, the redemption was created in consideration and for the benefit of the thing; in other words, of its owners, since things can not be the object of considerations and benefits; but we wish to signify that the owner receives such consideration and benefit through the thing; by improving the latter, the former derives benefit; where the thing goes, there goes the redemption: as long as he is owner, he derives benefit; if he ceases as such, he no longer derives benefit. In brief, redemption is a real right. Such is not the case in the subrogation of article 1067, there are no things there, there is nothing of a material order which may serve as core, pivot, as is the case in the redemption of co-owners; *it is the quality of heir in relation to the one who is not such heir that motivates the subrogation;* but that quality is purely personal, it springs from the law or the testator's will, and it is granted for family reasons, or otherwise, or both at the same time, but always motivated by affection, consideration, charity, altruism, generosity, pure sympathy, something, indeed, purely sentimental and human; for that reason we said at the start that in the drafting of that article reasons of a material character played no part, but in a very small proportion, although at first blush it may seem so, but the consideration that the lawmaker, in providing means to prevent the loss of the coheirs' hereditary rights, had in mind the difficulties and violence which the meddling of an owner who is a stranger may humanly entail in the different operations proper of the acceptance of the inheritance, intensifying the friction and resulting waste normally inhering therein. These fundamental differences which we have just pointed out lead us to the inevitable conclusion that the subrogation under consideration *can not be a species or subspecies of legal redemption of co-owners;* the latter, like all of them, shall be subrogation, but not all the subrogations, redemptions;. the redemption is the species, the subrogation, the class." (Italics ours.)

Colin y Capitant state the reasons more thoroughly, in our opinion, that justify the institution of the hereditary redemption, even conceding that it is contrary to the security of the transactions [4] and to the underlying rule of the incorporality in matters of contracts in our law. They state thus: [5]

"1. The partition is a family operation which, because it incorporates into the mass all the deceased's papers, may uncover family secrets, their situation, their business, which would be embarrasing to the ears of strangers.

"2. In the partition among next of kin it is frequently difficult to procure the consent necessary to carry out successfully the partition, which is the form most convenient for all. Would this not be even more difficult if there should participate in that act strangers moved by a desire to speculate?

"3. Lastly, the exclusion from the partition transactions of strangers assignees of hereditary rights affords to the coheirs a means of preserving the property in the family, particularly the hereditary real property. By this latter result the redemption of hereditary interests is linked with the oldest institution, but which is now obsolete, of family or patrimonial redemption."

From the foregoing it follows that, even if the community by hereditary transfer were agreed, when the coheir merely sells his undivided share in one or several particular properties of the inheritance estate, the relief to which his redeeming coheir is entitled is the redemption of co-owners. In order that the hereditary redemption may take place, it is necessary that the object of the transfer shall have been the heir's hereditary quota or share in the estate, since, as we have pointed out, the underlying purpose of the

---

[4] In the enlightening opinion on the question of redemptions rendered in *Zalduondo v. Iturregui*, 83 P.R.R. 1 (1961), the purchaser's right is characterized as "an unstable and revocable title," incapable of transmitting an "irrevocable title."

[5] 7 *Curso Elemental de Derecho Civil* 302 (3d ed. 1955). Professor Velázquez holds the same view, *op. cit.* at 112, when—citing Planiol y Ripert—he says more briefly that "it is the means organized by the law to circumscribe the state of indivision and the partition operations to the circle of the coheirs."

precept is to prevent the intervention of a stranger in the division operations. That is why the legal provision expressly provides that resort may be had to the successory subrogation only when the sale has taken place *before* the division. Scaevola, *op. cit.* at 667, says that this right of redemption subsists "as long as the community which is brought to an end by the division shall last," and makes reference to French decisions holding that such redemption "should not be admitted where the assignment did not include the whole of the assignor's successory rights, but only a quota share in one or in many specific real properties" (at 674). Lastly, he states that "where a sale of specific things of the inheritance has been carried out, such sale bars the exercise of the right of successory redemption" (at 675). In the Judgment of February 12, 1904 (97 *Jur. Civ.* 331) the Supreme Court of Spain expressly states that § 1067 of the Spanish Civil Code, counterpart of § 1020 of Puerto Rico, applies only in the case of an indeterminate successory right. See also, Calvo y Camina, *Contrato de Coherederos*, II *Revista de Derecho Privado* 176 (1915).

▇▇▇▇▇▇ An examination of the averments commented hereinbefore and of the facts as they appear from the record has convinced us that in the instant case the assignor coheirs sold to defendant-appellant, not their indeterminate share in all the properties of the estate, but a specific share in two pieces of real property of the estate. If it is observed that continuous reference is made to specific shares in the properties,[6] and if to this we add that the evidence

---

[6] The deed of sale of the undivided interests by the Esbri-Zaldo brothers was entitled "Assignment of Rights and Hereditary Shares." This, however, is compatible with the fact that the assignment referred to their rights in certain properties, a fact which is corroborated by a reading of the second paragraph of the complaint. The burden was on the plaintiff to show that this assignment was in fact a sale of the share of the assignor heirs in the predecessor's estate, and he failed to do so. Neither was it alleged, and, so far as we have been able to examine, nor was it proved that the division was not carried out.

The second deed was entitled Sale of Undivided Interest.

showed that the estate of Belén Esbri comprised, at least, another piece of real property—a small lot situated in the place Cantera de Ponce (tr. ev. 25), the criterion set forth may be ratified. Furthermore, the plaintiff himself from the commencement characterized the action filed as one of redemption among co-owners: his averments are consistent in his reference to the "community" and the "co-owners"; it is expressly agreed not to dispose of the redeemed undivided interests until four years have elapsed, an allegation which characterizes and is required only in this type of redemptions, *Noble* v. *Rodríguez*, 69 P.R.R. 447 (1949); *Martínez* v. *Pirallo*, 61 P.R.R. 87 (1942); *Vellón* v. *Central Pasto Viejo*, 34 P.R.R. 226 (1925), and the action is brought within nine days from the date in which, according to plaintiff, he learned of the sales, after the attorneys had showed great concern with respect to the expiration of such period (tr. ev. 188). However, all these carefully formulated averments and the facts to which we have made reference fall by the wayside when the trial court concludes that the plaintiff had knowledge of the sales—critical point to reckon the period for bringing the action—not on the date alleged by him (February 10), but one week prior thereto (February 3).

We therefore conclude that the question in the instant case is one of redemption of co-owners, and, it having been interposed after the expiration of the nine-day period counted as of the time the plaintiff had knowledge of the sales, the same can not prosper. This result bars consideration of the other questions raised by appellant.

Judgment will be rendered reversing the judgment rendered by the Superior Court, Ponce Part, on October 4, 1956.